**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE:<br><br>RICHARD DOUGLAS CULLINAN,<br><br>      Debtor. | Case No. 22-51326-WLH<br>Chapter 11 |
| COASTAL STATES BANK,<br><br>      Plaintiff,<br><br>v.<br><br>RICHARD DOUGLAS CULLINAN,<br>CHRISTINA M. CULLINAN, FIFTH THIRD<br>BANK, NATIONAL ASSOCIATION, AND<br>CREDIBILITY CAPITAL, INC.,<br><br>      Defendants. | Adv. Proc. No: _____ |

## **COMPLAINT**

COMES NOW, Coastal States Bank ("CSB" or "Plaintiff"), and files this Complaint, stating as follows:

### **JURISDICTION**

1.    This Court has subject-matter jurisdiction over this proceeding under 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b). This adversary proceeding relates to the Chapter 11 case captioned *In re Richard Douglas Cullinan*, Case No. 22-51326-WLH, pending in the United States Bankruptcy Court for the Northern District of Georgia (the "Bankruptcy Case").

2.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1409(a).

3.     This is a core proceeding arising under Title 11, which this Court may "hear and determine" under 28 U.S.C. § 157(b)(2)(I). In the event that this is deemed a non-core proceeding, CSB consents to the entry of final judgment by this Court.

4.     This adversary proceeding is brought pursuant to Fed. R. Bankr. P. 4007 and 7001.

## PARTIES

5.     Richard Douglas Cullinan ("Mr. Cullinan") is an individual who, according to his Chapter 11 bankruptcy petition, resides at 305 Cannady Court, Sandy Springs, Fulton County, Georgia 30350 (the "Property").

6.     Christina M. Cullinan ("Ms. Cullinan") is an individual who resides at the Property.

7.     Fifth Third Bank, National Association ("Fifth Third") is a foreign corporation organized under the law of the State of Ohio and authorized to transact business in the State of Georgia. Fifth Third can be served via its registered agent, Corporation Service Company, at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

8.     Credibility Capital, Inc. ("Credibility Capital") is a foreign corporation organized under the law of the State of Delaware and not authorized to transact business in the State of Georgia. Credibility Capital can be served via its registered agent, Corporation Service Company, at 251 Little Falls Drive, Wilmington, Delaware 19808.

9.     CSB is a foreign corporation organized under the laws of the State of South Carolina and authorized to conduct business in Georgia.

## FACTS

10.     On or around August 21, 2017, Mr. Cullinan and Ms. Cullinan obtained a loan from Cornerstone Bank ("Cornerstone") in the amount of $404,969.00 (the "Loan"). As evidence of the Loan, Mr. Cullinan executed a promissory note (the "Note") in favor of Cornerstone.

11.     To secure repayment of the Loan, Mr. Cullinan and Ms. Cullinan conveyed the Property via *Security Deed* (the "First Security Deed") to Cornerstone, which was recorded on August 29, 2017, in Book 57896, Page 402 of the real property records of the Superior Court of Fulton County, Georgia (the "Real Property Records"). A true and correct copy of the First Security Deed is attached hereto as **Exhibit "A"**.

12.     Also on or around August 21, 2017, Mr. Cullinan and Ms. Cullinan executed a Home Equity Line of Credit Security Deed in favor of Cornerstone, recorded on August 29, 2017, at Deed Book 57896, Page 414, of the Real Property Records (the "Second Security Deed"). The Second Security Deed secures a line of credit up to $50,000.00. A true and correct copy of the Assignment is attached hereto as **Exhibit "B"**.

13.     By mistake, and without consideration, on or around January 16, 2020, Cornerstone executed a Cancellation of Deed to Secure Debt (the "Mistaken Cancellation"), purporting to release the First Security Deed. The Mistaken Cancellation was recorded January 30, 2020, at Deed Book 61111, Page 344, of the Real Property Records. A true and correct copy of the Mistaken Cancellation is attached hereto as **Exhibit "C"**.

14.     On August 17, 2021, Fifth Third recorded a Writ of Fieri Facias (the "Fifth Third Lien") against the Property, recorded at Lien Book 5150, Page 670, of the Real Property records. A true and correct copy of the Fifth Third Lien is attached hereto as **Exhibit "D"** and incorporated herein by reference.

15.     On February 11, 2022, Credibility Capital recorded a Writ of Fieri Facias (the "Credibility Lien") against the Property, recorded at Lien Book 5213, Page 486, Fulton County, Georgia records. A true and correct copy of the Credibility Lien is attached hereto as **Exhibit "E"** and incorporated herein by reference.

16.     On or around February 17, 2022, Mr. Cullinan filed Chapter 11 Bankruptcy, Case No. 22-51326 (the "Bankruptcy").

17.     Mr. Cullinan listed the First Security Deed as secured against the Property on his Schedule D (the "Schedule D"). A true and correct copy of the Schedule D is attached hereto as **Exhibit "F"**.

18.     Mr. Cullinan also listed the Second Security Deed as secured against the Property on his Schedule D. *See* Ex. "F".

19.     In Schedule D of his Bankruptcy Petition, Mr. Cullinan listed (i) CSB as having a fully secured first mortgage on the Property in the amount of $375,000.00 pursuant to the First Security Deed and (ii) CSB having a second mortgage comprised of a secured claim in the amount of $50,000.00 pursuant to the Second Security Deed. None of the mortgage debt was listed as contingent, unliquidated, or disputed.

20.     CSB filed a Proof of Claim in the Bankruptcy (the "POC") claiming $372,168.64 as a secured lien against the Property.

21.     It was not until Mr. Cullinan filed Bankruptcy that CSB discovered the Mistaken Cancellation.

22.     The Mistaken Cancellation was recorded in error as the indebtedness remains valid and outstanding.

23.     In 2021, CSB purchased Cornerstone Bank. CSB is the current holder of the Note and successor in interest to Cornerstone.

**COUNT I**
**RESCISSION**

24.     CSB re-alleges and incorporates by reference Paragraphs 1-21 as if fully restated herein.

25.     Due to a mistake, the real estate records do not accurately reflect the Parties' respective interests. The Mistaken Cancellation should be rescinded to reflect the true intentions of the Parties.

26.     Because of their status as judgment lien holders only, Fifth Third and Credibility Capital are not bona fide purchasers for value and will not be prejudiced by rescission.

27.     There is no adequate remedy at law to reflect the true intention of the Parties.

**COUNT II**
**DECLARATORY JUDGMENT**

28.     CSB re-alleges and incorporates by reference Paragraphs 1-27 as if fully restated herein.

29.     This claim is an action for Declaratory Judgment brought pursuant to the provisions of 28 U.S.C. §§ 2201 *et seq*.

30.     An actual controversy exists between the Parties in this case in regard to the status of the Mistaken Cancellation of the First Security Deed.

31.     It is necessary and proper that the rights and status among the Parties hereto be declared, including with respect to the status of the First Security Deed.

32.     CSB seeks a declaration of rights, including a declaration that the First Security Deed, recorded in Deed Book 57896, Page 402, in the Real Property Records, remains in full

force and effect and that the Mistaken Cancellation, recorded by mistake and without consideration, recorded in Deed Book 61111, Page 344, of the Real Property Records, is null and void.

## **PRAYER FOR RELIEF**

WHEREFORE, CSB respectfully requests that the Court enter a judgment in its favor and against Defendants, as follows:

(a) That the Mistaken Cancellation, recorded at Deed Book 61111, Page 344, Fulton County, Georgia records, be rescinded and declared null and void;

(b) That the Court declare that the First Security Deed, recorded at Deed Book 57896, Page 402, Fulton County, Georgia records, is a first priority secured lien on the Property;

(c) That this Court award such other and further relief as may be just and proper.

Respectfully submitted, this 18th day of May, 2022.

*/s/ Bret J. Chaness*
BRET J. CHANESS (GA Bar No. 720572)
**RUBIN LUBLIN, LLC**
3145 Avalon Ridge Place, Suite 100
Peachtree Corners, GA 30071
(678) 281-2730 (Telephone)
(470) 508-9203 (Facsimile)
bchaness@rlselaw.com

*Attorney for Coastal States Bank*

6

EXHIBIT A

Deed Book 57896 Pg  402
Filed and Recorded Aug-29-2017 02:52pm
2017-0274152
Georgia Intangible Tax Paid $1,215.00
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

When recorded, return to:
Cornerstone Bank
2060 Mt. Paran Rd. NW
Suite 100
Atlanta, GA 30327

Sparks | King | Watts | Reddick, LLC
3475 Dallas Highway
Bldg. 300, Ste. 320
Marietta, GA 30064

—————————— [Space Above This Line For Recording Data] ——————————

## SECURITY DEED

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **August 21, 2017,** together with all Riders to this document.

**(B) "Borrower"** is  **RICHARD D. CULLINAN AND CHRISTINA M. CULLINAN.**

Borrower is the grantor under this Security Instrument.
**(C) "Lender"** is  **Cornerstone Bank.**

Lender is  **a Federally Chartered Savings Bank,** organized and existing under the laws of
**Georgia.** Lender's address is  **2060 Mt. Paran Rd. NW, Suite**
**100, Atlanta, GA 30327**

Lender is the grantee under this Security Instrument.
**(D) "Note"** means the promissory note signed by Borrower and dated **August 21, 2017.** The Note
states that Borrower owes Lender  **FOUR HUNDRED FOUR THOUSAND NINE HUNDRED SIXTY NINE AND**
**NO/100** * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * Dollars (U.S. **$404,969.00** )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later
than  **November 1, 2022.**
**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under
the Note, and all sums due under this Security Instrument, plus interest.
**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be
executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider    ☐ Second Home Rider
☐ Balloon Rider    ☐ Planned Unit Development Rider    ☒ Other(s) [specify]
☐ 1-4 Family Rider    ☐ Biweekly Payment Rider    *WAIVER OF BORROWER'S RIGHTS*
☐ V.A Rider                                       *AND CLOSING ATTORNEY AFFIDAVIT*

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3011 1/01
Ellie Mae, Inc.  Page 1 of 9

Initials: 
GAUDEED  0315
GAUDEED (CLS)
08/21/2017 08:48 AM PST

Deed Book 57896 Pg 403

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the **County**                                           [Type of Recording Jurisdiction] of **Dekalb**                                       [Name of Recording Jurisdiction]:

which currently has the address of   **305 Canady Court, Atl,**

                                                                                                                                    [Street] [City]

**Georgia   30350**                     ("Property Address"):
        [Zip Code]

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3011 1/01                    Initials: 
Ellie Mae, Inc.                                                    Page 2 of 9                                                                    GAUDEED  0315
                                                                                                                                                      GAUDEED (CLS)
                                                                                                                                                      08/21/2017 06:48 AM PST

Deed Book **57896** Pg **404**

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3011 1/01
Ellie Mae, Inc.                                                      Page 3 of 9

Initials: 

GALDEED  0315
GALDEED (CLS)
08/21/2017 06:48 AM PST

as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.   Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6.   Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7.   Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3011 1/01
Ellie Mae, Inc.                                                Page 4 of 9

Initials: 

GAUDEED   0315
GAUDEED (CLS)
08/21/2017 06:48 AM PST

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3011 1/01
Ellie Mae, Inc.                                 Page 5 of 9

Initials: 
GAUDEED  0315
GAUDEED (CLS)
08/21/2017 06:48 AM PST

Deed Book 57896 Pg 407

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3011 1/01
Ellie Mae, Inc.                                    Page 6 of 9

Initials: 

GAUDEED 0315
GAUDEED (CLS)
08/21/2017 06:48 AM PST

(whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken,

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3011 1/01
Ellie Mae, Inc.                                Page 7 of 9                                Initials: _____



GAIJDEED  0315
GAIJDEED (CLS)
08/21/2017 06:48 AM PST

Deed Book 57896 Pg 409

that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**25. Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**26. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3011 1/01
Ellie Mae, Inc.                                    Page 8 of 9

Initials:

GAUDEED 0315
GAUDEED (CLS)
08/21/2017 06:48 AM PST

Deed Book 57896 Pg 410

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, sealed and delivered in the presence of:

_____  8/21/17 (Seal)
RICHARD DOUG CULLINAN                         DATE

_____  8/21/17 (Seal)
CHRISTINA M. CULLIVAN.                         DATE

_____
Unofficial Witness

Notary Public, _____
FULTON County

OFFICIAL SEAL
ANNA C. DOUGHERTY
Notary Public, Georgia
COBB COUNTY
My Commission Expires
JUNE 21, 2020

Lender: Cornerstone Bank
NMLS ID: 225612
Loan Originator: Linda Ash
NMLS ID: 684797

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3011 1/01
Ellie Mae, Inc.                                          Page 9 of 9

Initials: _____
GAUDEED  0315
GAUDEED (CLS)
08/21/2017 06:48 AM PST



## EXHIBIT "A"

All that tract or parcel of land lying and being in Land Lot 338, 6th District, Fulton County, Georgia, being Lot 54, Block D, Deerfield, Unit Four, as shown on plat recorded in Plat Book 126, Page 101, Fulton County, Georgia Records which plat is incorporated herein by this reference and made a part hereof.

Tax Parcel ID 06-0338-0003-045-2

ALL_ExhibitA_LegalDescription_Letter                                        GA-BHD170099REF

Deed Book **57896** Pg **412**

GEORGIA -

Grantor: **Richard Doug Cullinan**

Date: **August 21, 2017**

Property Address: **305 Canady Court**
**Atl, GA 30350**

Lender: **Cornerstone Bank**

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE **RIGHT TO ACCELERATE** THE DEBT AND THE **POWER OF ATTORNEY** GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) **WAIVES** ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

RICHARD DOUG CULLINAN                                                           8/21/17
                                                                                DATE

CHRISTINA M. CULLINAN                                                           8/21/17
                                                                                DATE

Unofficial Witness

Notary Public,
**FULTON** County



OFFICIAL SEAL
ANNA C. DOUGHERTY
Notary Public, Georgia
COBB COUNTY
My Commission Expires
JUNE 21, 2020

Ellie Mae, Inc.

Page 1 of 2

GABORWAV  1011
GABORWAV (CLS)
08/21/2017 06:48 AM PST



## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me                                                on the date set forth above.

_____                                    _____
Notary Public                                                                                  Closing Attorney

Ellie Mae, Inc.                                         Page 2 of 2                              GABORWAV  1011
                                                                                                                  GABORWAV (CLS)
                                                                                                      08/21/2017 06:48 AM PST

Deed Book 57896 Pg 413
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia




EXHIBIT B

Deed Book 57896 Pg 414
Filed and Recorded Aug-29-2017 02:52pm
2017-0274153
Georgia Intangible Tax Paid $150.00
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

When recorded, return to:
Cornerstone Bank
2060 Mt. Paran Rd. NW
Suite 100
Atlanta, GA 30327

Sparks | King | Watts | Reddick, LLC
3475 Dallas Highway
Bldg 300, Ste. 320
Marietta, GA 30064
GABND 170103PBK

### SECURITY DEED
### HOME EQUITY LINE OF CREDIT
(Securing Future Advances)

THIS SECURITY DEED is made on   **August 21, 2017.**          The grantor is   **RICHARD DOUG CULLINAN AND CHRISTINA M CULLINAN, HUSBAND AND WIFE AS JOINT TENANTS WITH RIGHT OF SURVIVORSHIP, HUSBAND AND WIFE AS JOINT TENANTS WITH RIGHT OF SURVIVORSHIP**

This Security Deed is given to   **Cornerstone Bank, a Federally Chartered Savings Bank,**

whose address is   **2060 Mt. Paran Rd. NW, Suite 100, Atlanta, GA 30327.**

In this Security Deed, the terms "you," "your" and "yours" refer to the grantor(s). The terms "we," "us" and "our" refer to **Cornerstone Bank.**

Pursuant to a Home Equity Line of Credit Agreement dated the same date as this Security Deed ("Agreement"), you may incur maximum unpaid loan indebtedness (exclusive of interest thereon) in amounts fluctuating from time to time up to the maximum principal sum outstanding at any time of   **FIFTY THOUSAND AND NO/100**************************************************** Dollars (U.S.   **$50,000.00**          ). All amounts due under the Agreement must be paid in full not later than   **September 1, 2037.**          You agree that this Security Deed shall continue to secure all sums now or hereafter advanced under the terms of the Agreement including, without limitation, such sums that are advanced by us whether or not at the time the sums are advanced there is any principal sum outstanding under the Agreement. The parties hereto intend that this Security Deed shall secure unpaid balances, and all other amounts due to us hereunder and under the Agreement.

This Security Deed secures to us: (a) the repayment of the debt evidenced by the Agreement, with interest, and all refinancings, renewals, extensions and modifications of the Agreement; (b) the payment of all other sums, with interest, advanced under this Security Deed to protect the security of this Security Deed; and (c) the performance of your covenants and agreements under this Security Deed and the Agreement. For this purpose and in consideration of the

GA - DEED OF TRUST - Single Family - HELOC - HC# 19968 (12/99)
Ellie Mae, Inc.                                          Page 1 of 5

Initials: 
GADDEED  1208
GADDEED (CLS)
08/21/2017 06:54 AM PST

Deed Book **57896** Pg    **415**

debt, you do hereby grant and convey to us and our successors and assigns the following described property located in **DeKalb**   County, Georgia:

SEE EXHIBIT "A"

which has the address of   **305 Cannady Court, Atl,**

Georgia   **30350**   ("Property Address");

TO HAVE AND TO HOLD this property unto you and your successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Deed. All of the foregoing is referred to in this Security Deed as the "Property."

YOU COVENANT that you are lawfully seised of the estate hereby conveyed and have the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. You warrant and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

YOU AND WE covenant and agree as follows:
   1.   **Payment of Principal, Interest and Other Charges.** You shall pay when due the principal and interest owing under the Agreement and Section 1 and all other charges due hereunder and due under the Agreement.
   2.   **Application of Payments.** Unless applicable law provides otherwise, all payments received by us under the Agreement and Section 1 shall be applied by us as provided in the Agreement.
   3.   **Prior Security Deeds; Charges; Liens.** You have disclosed to us and obtained our approval of any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Deed. You shall perform all of your obligations under any mortgage, deed of trust or other security instruments with a lien which has priority over this Security Deed, including your covenants to make payments when due. You shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Deed, and leasehold payments or ground rents, if any. Upon our request, you shall promptly furnish to us all notices of amounts to be paid under this paragraph and receipts evidencing any such payments you make directly. You shall promptly discharge any lien (other than a lien disclosed to us in your application or in any title report we obtained) which has priority over this Security Deed.
   If applicable law authorizes us to do so, we specifically reserve to ourself and our successors and assigns the unilateral right, upon an event of default in payment of taxes, assessments or insurance on the Property, to require, upon notice, that you pay to us on the day monthly payments are due an amount equal to one-twelfth (1/12) of the yearly taxes, and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Security Deed and ground rents on the Property, if any, plus one-twelfth (1/12) of yearly premium installments for hazard and mortgage insurance, all as we reasonably estimate initially and from time to time, as allowed by and in accordance with applicable law.
   4.   **Hazard Insurance.** You shall keep the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which we require insurance. This insurance shall be maintained in the amounts and for the periods that we require. You may choose any insurer reasonably acceptable to us. Insurance policies and renewals shall be acceptable to us and shall include a standard mortgagee clause. If we require, you shall promptly give us all receipts of paid premiums and renewal notices. If you fail to maintain coverage as required in this section, you authorize us to obtain such coverage as we in our sole discretion determine appropriate to protect our interest in the Property in accordance with the provisions in Section 6. You understand and agree that any coverage we purchase may cover only our interest in the Property and may not cover your interest in the Property or any personal property therein. You also understand and agree that the premium for any such insurance may be higher than the premium you would pay for such insurance. You shall promptly notify the insurer and us of any loss. We may make proof of loss if you do not promptly do so.
   We may also, at our option and on your behalf, adjust and compromise any claims under the insurance, give releases or acquittances to the insurance company in connection with the settlement of any claim and collect and receive insurance proceeds. You appoint us as your attorney-in-fact to do all of the foregoing, which appointment you understand and agree is irrevocable, coupled with an interest with full power of substitution and shall not be affected by your subsequent disability or incompetence.
   Insurance proceeds shall be applied to restore or repair the Property damaged, if restoration or repair is economically feasible and our security would not be lessened. Otherwise, insurance proceeds shall be applied to sums secured by this Security Deed, whether or not then due, with any excess paid to you. If you abandon the Property, or do not answer within 30 days after we give notice to you that the insurer has offered to settle a claim, then we may collect and use the proceeds to repair or restore the Property or to pay sums secured by this Security Deed, whether or not then due. Any application of proceeds to principal shall not require us to extend or postpone the due date of monthly payments or change the amount of monthly payments. If we acquire the Property at a forced sale following your default,

GA - DEED OF TRUST - Single Family - HELOC - HC# 19968 (12/99)

Ellie Mae, Inc.

Page 2 of 5

Initials: 

GA0DEED   1208
GA0DEED (CLS)
08/21/2017 08:54 AM PST

your right to any insurance proceeds resulting from damage to the Property prior to the acquisition shall pass to us to the extent of the sums secured by this Security Deed immediately prior to the acquisition.

You shall not permit any condition to exist on the Property which would, in any way, invalidate the insurance coverage on the Property.

**5.  Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** You shall not destroy, damage or substantially change the Property, allow the Property to deteriorate, or commit waste. You shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in our good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Deed or our security interest. You may cure such a default, as provided in Section 17, by causing the action or proceeding to be dismissed with a ruling that, in our good faith determination, precludes forfeiture of your interest in the Property or other material impairment of the lien created by this Security Deed or our security interest. You shall also be in default if you, during the loan application process, gave materially false or inaccurate information or statements to us (or failed to provide us with any material information) in connection with the loan evidenced by the Agreement, including, but not limited to, representations concerning your occupancy of the Property as a principal residence. If this Security Deed is on a leasehold, you shall comply with the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If you acquire fee title to the Property, the leasehold and fee title shall not merge unless we agree to the merger in writing.

**6.  Protection of Our Rights in the Property; Security Deed Insurance.** If you fail to perform the covenants and agreements contained in this Security Deed, or there is a legal proceeding that may significantly affect our rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then we may do, and pay for, anything necessary to protect the Property's value and our rights in the Property. Our actions may include paying any sums secured by a lien which has priority over this Security Deed or over any advance under the Agreement or this Security Deed, appearing in court, paying reasonable attorney's fees, paying any sums which you are required to pay under this Security Deed and entering on the Property to make repairs. We do not have to take any action we are permitted to take under this Section; and amounts we pay under this Section shall become additional debts you owe us and shall be secured by this Security Deed. These amounts shall bear interest from the disbursement date at the rate established under the Agreement and shall be payable, with interest, upon our request. If we required mortgage insurance as a condition of making the loan secured by this Security Deed, you shall pay the premiums for such insurance until such time as the requirement for the insurance terminates.

**7.  Inspection.** We may enter and inspect the Property at any reasonable time and upon reasonable notice.

**8.  Condemnation.** The proceeds of any award for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to us. If the Property is abandoned, or if, after notice by us to you that the condemnor offers to make an award or settle a claim for damages, you fail to respond to us within 30 days after the date the notice is given, we are authorized to collect and apply the proceeds, at our option, either to restoration or repair of the Property or to the sums secured by this Security Deed, whether or not then due. Unless we and you otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments payable under the Agreement and Section 1 or change the amount of such payments.

**9.  No Release Upon Extension or Modification.** Our granting of any extension of time for payment or our agreement to modify the terms of repayment of the obligations under the Agreement or the requirements in this Deed of Trust shall not operate to release you from your obligations or liability under the Agreement or this Deed of Trust.

**10.  Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Deed shall bind and benefit your successors and permitted assigns. Your covenants and agreements shall be joint and several. Anyone who co-signs this Security Deed but does not execute the Agreement: (a) is co-signing this Security Deed only to mortgage, grant and convey such person's interest in the Property; (b) is not personally obligated to pay the Agreement, but is obligated to pay all other sums secured by this Security Deed; and (c) agrees that we and anyone else who signs this Security Deed may agree to extend, modify, forbear or make any accommodations regarding the terms of this Security Deed or the Agreement without such person's consent.

**11.  Loan Charges.** If the loan secured by this Security Deed is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from you which exceed permitted limits will be refunded to you. We may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to you. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Agreement.

**12.  Notices.** Unless otherwise required by law, any notice to you provided for in this Security Deed shall be delivered or mailed by first class mail to the Property Address or any other address you designate by notice to us, and any notice to us shall be delivered or mailed by first class mail to our address stated above or any other address we designate by notice to you.

**13.  Governing Law; Severability.** The interpretation and enforcement of this Security Deed shall be governed by the law of the jurisdiction in which the Property is located, except as preempted by federal law. In the event that any provision or clause of this Security Deed or the Agreement conflicts with applicable law, such conflict shall not affect other provisions of this Security Deed or the Agreement which can be given effect without the conflicting provision. To this end the provisions of this Security Deed and the Agreement are declared to be severable.

**14.  Transfer of the Property.** If all or any part of the Property or any interest in it is sold or transferred without our prior written consent, we may, at our option, require immediate payment in full of all sums secured by this Security Deed. However, this option shall not be exercised by us if exercise is prohibited by federal law as of the date of this Security Deed.

**15.  Sale of Agreement; Change of Loan Servicer.** The Agreement or a partial interest in the Agreement (together with this Security Deed) may be sold one or more times without prior notice to you. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Agreement and this Security Deed. There also may be one or more changes of the Loan Servicer unrelated to the sale of the Agreement. If there is a change of the Loan Servicer, you will be given written notice of the change as required by applicable law. The notice will state



the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any information required by applicable law.

**16. Hazardous Substances.** You shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. You shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of Hazardous Substances in quantities that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. You shall promptly give us written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which you have actual knowledge. If you learn or are notified by any government or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, you shall promptly take all necessary remedial actions in accordance with Environmental Law. As used in this Security Deed, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Security Deed, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**17. Acceleration; Remedies.** You will be in default if (1) any payment required by the Agreement or this Security Deed is not made when it is due; (2) we discover that you have committed fraud or made a material misrepresentation in connection with the Agreement; or (3) your action, or your failure to act, adversely affects our security for the Agreement or any right we have in the Property. If a default occurs, we will give you notice specifying: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to you, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Deed, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform you of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and sale. If the default is not cured on or before the date specified in the notice, we may, at our option, require immediate payment in full of all sums secured by this Security Deed without further demand and may invoke the power of sale granted by you and any other remedies permitted by applicable law. You appoint us as your agent and attorney-in-fact to exercise the power of sale. We shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 17, including, but not limited to, reasonable attorneys' fees as permitted by applicable law.

If we invoke the power of sale, we shall give you a copy of a notice of sale in the manner prescribed by applicable law and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. We, without further demand on you, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order we determine. We or our designee may purchase the Property at any sale.

We shall convey to the purchaser indefeasible title to the Property, and hereby you appoint us as your agent and attorney-in-fact to make such conveyance. The recitals in such deed shall be conclusive evidence of the truth of the statements made therein, unless otherwise provided by applicable law. You covenant and agree that we shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees (as set forth above); (b) to all sums secured by this Security Deed; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by law.

If the Property is sold pursuant to this Section 17, you, or any person holding possession of the Property through you, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, you or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

**18. Discontinuance of Enforcement.** Notwithstanding our acceleration of the sums secured by this Security Deed under the provisions of Section 17, we may, in our sole discretion and upon such conditions as we in our sole discretion determine, discontinue any proceedings begun to enforce the terms of this Security Deed.

**19. Release.** Upon your request and payment of all sums secured by this Security Deed, we shall release this Security Deed. You will be responsible for all costs of recording such release.

**20. Additional Charges.** You agree to pay reasonable charges as allowed by law in connection with the servicing of this loan including, without limitation, the costs of obtaining tax searches and subordinations, provided, however, that nothing contained in this section is intended to create and shall not be construed to create any duty or obligation by us to perform any such act, or to execute or consent to any such transaction or matter, except a release of the Security Deed upon full repayment of all sums secured thereby.

**21. Waiver.** No waiver by us at any time of any term, provision or covenant contained in this Security Deed or in the Agreement secured hereby shall be deemed to be or construed as a waiver of any other term, provision or covenant or of the same term, provision or covenant at any other time.

**22. Waiver of Homestead.** You waive all rights of homestead exemption in the Property.

**23. Assumption Not a Novation.** Our acceptance of an assumption of the obligations of this Security Deed and the Note, and any release of you in connection therewith, shall not constitute a novation.

**24. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

**25. Riders to this Security Deed.** If one or more riders are executed by you and recorded together with this Security Deed, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Deed as if the rider(s) were part of this Security Deed.

☐ Condominium Rider    ☐ 1-4 Family Rider    ☐ Planned Unit Development Rider
☐ Other(s) (specify)

GA - DEED OF TRUST - Single Family - HELOC - HC# 19968 (12/99)
Ellie Mae, Inc.                                    Page 4 of 5

Initials: 

GAQDEED  1208
GAQDEED (CLS)
08/21/2017 08:54 AM PST

Deed Book 57896 Pg 418

**IN WITNESS WHEREOF,** Grantor has signed and sealed this Security Instrument.

Signed, sealed and delivered in the presence of:

_____     8/21/17 (Seal)
RICHARD DOUG CULLINAN                          DATE

_____     8/21/17 (Seal)
CHRISTINA M CULLINAN                            DATE

_____
Unofficial Witness

_____
Notary Public,
FULTON County

OFFICIAL SEAL
ANNA C. DOUGHERTY
Notary Public, Georgia
COBB COUNTY
My Commission Expires
JUNE 21, 2020

Lender: Cornerstone Bank
NMLS ID: 225612
Loan Originator: Linda Ash
NMLS ID: 684797



Initials: _____

GA - DEED OF TRUST - Single Family - HELOC - HC# 19968 (12/99)
Ellie Mae, Inc.                    Page 5 of 5             GADEED 1208
                                                            GADEED (CLS)
                                                      08/21/2017 06:54 AM PST

Deed Book 57896 Pg 419

# EXHIBIT "A"

All that tract or parcel of land lying and being in Land Lot 338, 6th District, Fulton County, Georgia, being Lot 54, Block D, Deerfield, Unit Four, as shown on plat recorded in Plat Book 126, Page 101, Fulton County, Georgia Records which plat is incorporated herein by this reference and made a part hereof.

Tax Parcel ID 06-0338-0003-045-2

**This conveyance is made subject to that certain security deed from Richard D. Cullinan and Christina M. Cullinan to Cornerstone Bank dated August 21, 2017, in the original amount of $404,969.00 of even date and recorded simultaneously herewith, Fulton County, Georgia records.**

ALL_ExhibitA_LegalDescription_Letter                                    GA-BHD170103PBK

Deed Book **57896** Pg   **420**

GEORGIA -

Grantor: **Richard Doug Cullinan**

Date: **August 21, 2017**

Property Address: **305 Cannady Court**
                  **Atl, GA 30350**

Lender: **Cornerstone Bank**

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE **RIGHT TO ACCELERATE** THE DEBT AND THE **POWER OF ATTORNEY** GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) **WAIVES** ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

| | |
|---|---|
| _RICHARD DOUG CULLINAN_ | 8/21/17 |
| RICHARD DOUG CULLINAN | DATE |
| _CHRISTINA M CULLINAN_ | 8/21/17 |
| CHRISTINA M CULLINAN | DATE |



Deed Book **57896** Pg   **421**

_Lori A Conne_
**Unofficial Witness**

**Notary Public,**
**FULTON County**

OFFICIAL SEAL
ANNA C. DOUGHERTY
Notary Public, Georgia
COBB COUNTY
My Commission Expires
JUNE 21, 2020

Ellie Mae, Inc.

Page 2 of 3

GABORWAV 1011
GABORWAV (CLS)
08/21/2017 06:54 AM PST



Deed Book 57896 Pg  422

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me                                              on the date set forth above.

_____                                    _____
                        Notary Public                                                              Closing Attorney



Deed Book 57896 Pg  423
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

# GEORGIA FORECLOSURE DISCLOSURE

Borrower(s):  **Richard Doug Cullinan**                    Date:  **August 21, 2017**

**█████████████████**

Property Address:  **305 Cannady Court**
**Atl, GA, 30350**

Lender:  **Cornerstone Bank**

O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

_____      8/21/17
RICHARD DOUG CULLINAN                                    DATE

_____      8/21/17
CHRISTINA M CULLINAN                                          DATE

Ellie Mae, Inc.

GAFORDIS  0609
GAFORDIS (CLS)
08/21/2017 06:54 AM PST



```
Deed Book 61111 Pg  344
Filed and Recorded Jan-30-2020 10:44am
        2020-0018074
  CATHELENE ROBINSON
     Clerk of Superior Court
     Fulton County, Georgia
```

After recording return to:
**CORNERSTONE BANK**
**2060 Mt Paran Rd NW**
**Suite 100**
**Atlanta, GA 30327**

████████████

## CANCELLATION OF DEED TO SECURE DEBT

Fulton County, Georgia

The indebtedness referred to in that certain **Deed to Secure Debt** by and between **Richard D. Cullinan and Christina M. Cullinan,** party of the first part, hereinafter referred to as "Grantor", and **Cornerstone Bank**, herein referred to as "Grantee" made and entered into on the **21st day of August 2017.**

**Recorded in Deed Book 57896, Page 402, Fulton County, Georgia, on August 29, 2017.**

Having been paid in full and the undersigned being the present record holder and owner of such deed, assignment, modification or transfer, the Clerk of Court is authorized and directed to cancel said document of record.

In witness whereof, the undersigned has set his hand and seal this ___16th___ day of January 2020.

Cornerstone Bank

By: _____

Robert Boccolucci, VP/Credit Manger

Witness _____

Signed, sealed and delivered on the
Date above shown in the presence of:

_____
Unofficial Witness

_____
Notary Public

EXHIBIT D

# WRIT OF FIERI FACIAS
## IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA

CIVIL ACTION NUMBER  2021CV345748

JUDGMENT DATE  7/21/2021

**Plaintiff's Attorney – Name, Address & Telephone**

**Name**: BRIAN J. LEVY

**Address**: BURR & FOREMAN LLP
171 17TH ST NW STE 1100
ATLANTA, GA 30363

**Telephone & Area Code** 404-815-3000

Fi. Fa. In Hands of:_____
_____

FIFTH THIRD BANK, NATIONAL ASSOCIATION

Plaintiff(s)

VS.

GA FAST CASUAL II, LLC, C^2 INVESTMENT PARTNERS, LLC, HABERSHAM HOWELL MILL PARTNERSLLC, AND RICHARD DOUGLAS CULLINAN, jointly and severally

Defendant(s)

To all and singular the sheriffs of the State and their lawful deputies:

In the above styled case, and on the judgment date set out, the plaintiff(s) named above, judgment in the following sums:

| | | |
|---|---|---|
| Principal | $ | 892,081.63 |
| Interest | $ | 96,867.12 |
| Fees | $ | 1,920.90 |
| Attorney's Fees | $ | 13,029.32 |
| Court Cost | $ | |
| Totals | $ | |

NOTE:_____
_____

with future interest upon said principal amount from the date of the judgment at the legal rate.

### CANCELLATION

The within and forgoing Fi Fa. Having been paid in full the Clerk of Superior Court is hereby directed to cancel it of this _____ day of _____ 20 _____

Signature:

_____

Title:

_____

Therefore, YOU ARE COMMANDED, that of the goods and chattels, land and tenements of said defendant(s). and ESPECIALLY/ONLY of the following described property, to wit:

YOU cause to be made the several sums set out in the forgoing recital of the judgment in this cause and have the said several sums of money before the Superior Court of this County at the next term of court, with this Writ to render to said plaintiff(s), interest, attorney fees and costs aforesaid.

Witness the Honorable ___ PAIGE REESE WHITAKER _____ Judge of Said Court, this the 17TH _____ day of AUGUST, 2021.

Cathelene Robinson Clerk of Superior Court

By: _____

Deputy Clerk

Entered on General Execution Docket at
Page _____ this _____ day of _____, 20 _____.

Lien  5150 Pg  670
Filed and Recorded Aug-17-2021 08:42am
2021-0273843
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

166-16-689

EXHIBIT E

## STATE COURT OF DEKALB COUNTY

Lien Book 5213 Page 486
Filed and Recorded 02/11/2022 10:28:00 AM
2022-0032170
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, GA
Participant IDs: 6646558108

**GEORGIA, DEKALB COUNTY**
**WRIT OF FIERI FACIAS**

Credibility Capital, Inc.

Plaintiff(s)

Vs

| 20A82478-4 | CASE NUMBER |
| January 10, 2022 | JUDGMENT DATE |

Midtown Restaurant Acquisition, LLC
1471 Devonash Lane
Atlanta GA  30338 and
Richard D Cullinan
305 Cannady Ct
Sandy Springs, Ga 30350

Defendant(s)

Plaintiff's Attorney-Name, Address & Telephone
Howell A. Hall
211 Perimeter Center Pkwy
Suite 300
Atlanta GA  30346
770-452-2819          Telephone & Area Code
FiFa in Hands of:          ATTORNEY

*To the Marshal of the State Court of DeKalb County or his lawful Deputies and to all and singular the Sheriffs of the State or their lawful Deputies: and to all lawful Constables of said State.*

In the above styled case, and on the judgment date set out, the plaintiff(s) named above recovered against the defendant(s) named above, judgment in the following sums:

### CANCELLATION

The within and foregoing Fi Fa, having been paid in full the Clerk of Superior Court is hereby directed to cancel it of record. This_____day of_____, 2022

Signature:_____

Title:_____

| | |
| --- | --- |
| $113,463.73 | Principal |
| $18,005.02 | Interest |
| $200.00 | Other |
| $13,898.24 | Attorney's Fees |
| $0.00 | Court Costs |
| $145,566.99 | Total |

**NOTE:**

With future interest upon said principal amount from the date of judgment at the legal rate %.
Therefore, YOU ARE COMMANDED, that the goods and chattels, lands and tenements of said defendant(s), and ESPECIALLY/ONLY of the following described property, to wit:
       You cause to be made the several sums set out in the foregoing recital of the judgment in this case and have the said several sums of money before the State Court of this County at the next term of court, with this WRIT to render to said plaintiff(s) the principal, interest, attorney fees and cost aforesaid.
Witness the Honorable Judges of said Court.

21st day of January, 2022

Mary Bell, Clerk
State Court of DeKalb County

**2022026074**   LIEN BOOK **2472**  Pg **399**
Filed and Recorded:
2/2/2022 8:50:15 AM
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

By:_____
Deputy Clerk

A diligent search was made and no property of the defendant(s) _____

_____
has been found in this County, on which to levy this Fi Fa. This the _____ day of _____ ,20 ____ .

| **STATE OF GEORGIA, COUNTY OF** : | **STATE OF GEORGIA, COUNTY OF** : |
|---|---|
| I have this day executed the within Fi Fa by levying upon and seizing the following described property of defendant(s), to-wit: | I have this day executed the within Fi Fa by levying upon and seizing the following described property of defendant(s), to-wit: |
| | |
| Levied at _____ | Levied at _____ |
| Georgia, this _____ day of _____ ,20 ____ | Georgia, this _____ day of _____ 20 ____ |
| _____ Deputy Marshal | _____ Deputy Marshal |
| _____ | _____ |

| | | | | | |
|---|---|---|---|---|---|
| Marshal's Service | $ _____ | | Marshal's Service | $ _____ | |
| Marshal's Commission | $ _____ | | Marshal's Commission | $ _____ | |
| Marshal's Deed | $ _____ | | Marshal's Deed | $ _____ | |
| Marshal's Levy | $ _____ | | Marshal's Levy | $ _____ | |
| Advertising Fee | $ _____ | | Advertising Fee | $ _____ | |
| Other | $ _____ | | Other | $ _____ | |
| Total | $ _____ | | Total | $ _____ | |
| Net Proceeds | $ _____ | | Net Proceeds | $ _____ | |

| | |
|---|---|
| _____ Marshal | _____ Marshal |
| _____ Deputy Marshal | _____ Deputy Marshal |

**Fill in this information to identify your case:**

Debtor 1    Richard Douglas Cullinan
First Name    Middle Name    Last Name

Debtor 2
(Spouse, if filing)   First Name    Middle Name    Last Name

United States Bankruptcy Court for the: Northern District of Georgia

Case number   22-51326
(if know)

# EXHIBIT F

☐ Check if this is an amended filing

Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

1. **Do any creditors have claims secured by your property?**
   ☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.
   ☑ Yes. Fill in all of the information below.

**Part 1:**    List All Secured Claims

2. **List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | **Column A** Amount of claim Do not deduct the value of collateral. | **Column B** Value of collateral that supports this claim | **Column C** Unsecured portion If any |
|---|---|---|---|---|

**2.1**

Describe the property that secures the claim:   $ 375,000.00    $ 620,500.00    $ 0.00

Coastal States Bank
Creditor's Name

c/o Corporation Service Company
Number   Street

2 SUN COURT, SUITE 400

Norcross GA    30092
City    State    ZIP Code

**Who owes the debt?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim relates to a community debt**

Date debt was incurred _____

305 Cannady Court, Atlanta, GA 30350 - $620,500.00

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.
☑ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Last 4 digits of account number

Official Form 106D     Schedule D: Creditors Who Have Claims Secured by Property     page 1 of 3

| 2.2 | | Describe the property that secures the claim: | $ 50,000.00 | $ 620,500.00 | $ 50,000.00 |

**Coastal States Bank**
Creditor's Name

**c/o Corporation Service Company**
Number    Street

**2 SUN COURT, SUITE 400**

**Norcross GA    30092**
City    State    ZIP Code

**Who owes the debt?** Check one.
- [x] Debtor 1 only
- [ ] Debtor 2 only
- [ ] Debtor 1 and Debtor 2 only
- [ ] At least one of the debtors and another

- [ ] **Check if this claim relates to a community debt**

**Date debt was incurred** _____

305 Cannady Court, Atlanta, GA 30350 - $620,500.00

**As of the date you file, the claim is:** Check all that apply.
- [ ] Contingent
- [ ] Unliquidated
- [ ] Disputed

**Nature of lien.** Check all that apply.
- [x] An agreement you made (such as mortgage or secured car loan)
- [ ] Statutory lien (such as tax lien, mechanic's lien)
- [ ] Judgment lien from a lawsuit
- [ ] Other (including a right to offset) _____

**Last 4 digits of account number**

---

| 2.3 | | Describe the property that secures the claim: | $ 145,566.99 | $ 0.00 | $ 145,566.99 |

**CREDIBILITY CAPITAL INC**
Creditor's Name

**625 Broad St.**
Number    Street

**Newark NJ    07102**
City    State    ZIP Code

**Who owes the debt?** Check one.
- [x] Debtor 1 only
- [ ] Debtor 2 only
- [ ] Debtor 1 and Debtor 2 only
- [ ] At least one of the debtors and another

- [ ] **Check if this claim relates to a community debt**

**Date debt was incurred** _____

- $0.00

**As of the date you file, the claim is:** Check all that apply.
- [ ] Contingent
- [ ] Unliquidated
- [ ] Disputed

**Nature of lien.** Check all that apply.
- [ ] An agreement you made (such as mortgage or secured car loan)
- [ ] Statutory lien (such as tax lien, mechanic's lien)
- [x] Judgment lien from a lawsuit
- [ ] Other (including a right to offset) _____

**Last 4 digits of account number**

---

| 2.4 | | Describe the property that secures the claim: | $ 34,823.00 | $ 38,000.00 | $ 0.00 |

**Fifth Third Bank**
Creditor's Name

**PO Box 598**
Number    Street

**Amelia OH    45102-0000**
City    State    ZIP Code

**Who owes the debt?** Check one.
- [x] Debtor 1 only
- [ ] Debtor 2 only
- [ ] Debtor 1 and Debtor 2 only
- [ ] At least one of the debtors and another

- [ ] **Check if this claim relates to a community debt**

**Date debt was incurred** _____

2017 Audi A8 - $38,000.00

**As of the date you file, the claim is:** Check all that apply.
- [ ] Contingent
- [ ] Unliquidated
- [ ] Disputed

**Nature of lien.** Check all that apply.
- [x] An agreement you made (such as mortgage or secured car loan)
- [ ] Statutory lien (such as tax lien, mechanic's lien)
- [ ] Judgment lien from a lawsuit
- [ ] Other (including a right to offset) _____

**Last 4 digits of account number**

---

| | | | $ 1,003,898.97 | $ 620,500.00 | $ 758,398.97 |

**2.5**

Describe the property that secures the claim:

Fifth Third Bank, Inc.
Creditor's Name

P.O. Box 34111
Number       Street

Memphis TN     38184-0000
City       State       ZIP Code

305 Cannady Court, Atlanta, GA 30350 - $620,500.00 Fifa

**Who owes the debt?** Check one.
- [x] Debtor 1 only
- [ ] Debtor 2 only
- [ ] Debtor 1 and Debtor 2 only
- [ ] At least one of the debtors and another

- [ ] **Check if this claim relates to a community debt**

Date debt was incurred  07/21/2021

**As of the date you file, the claim is:** Check all that apply.
- [ ] Contingent
- [ ] Unliquidated
- [ ] Disputed

**Nature of lien.** Check all that apply.
- [ ] An agreement you made (such as mortgage or secured car loan)
- [ ] Statutory lien (such as tax lien, mechanic's lien)
- [x] Judgment lien from a lawsuit
- [ ] Other (including a right to offset)

Last 4 digits of account number

---

| | | | $ 259,600.00 | $ 0.00 | $ 259,600.00 |

**2.6**

Describe the property that secures the claim:

Truist Bank, Inc.
Creditor's Name

c/o Corporation Service Company
Number       Street

2 SUN COURT, SUITE 400

Norcross GA     30092
City       State       ZIP Code

Cash in Money Market Account - $0.00

**Who owes the debt?** Check one.
- [x] Debtor 1 only
- [ ] Debtor 2 only
- [ ] Debtor 1 and Debtor 2 only
- [ ] At least one of the debtors and another

- [ ] **Check if this claim relates to a community debt**

Date debt was incurred  _____

**As of the date you file, the claim is:** Check all that apply.
- [ ] Contingent
- [ ] Unliquidated
- [ ] Disputed

**Nature of lien.** Check all that apply.
- [ ] An agreement you made (such as mortgage or secured car loan)
- [ ] Statutory lien (such as tax lien, mechanic's lien)
- [ ] Judgment lien from a lawsuit
- [x] Other (including a right to offset)
Money Held in Account as Security

Last 4 digits of account number

---

Add the dollar value of your entries in Column A on this page. Write that number here:      $ 1,868,888.96

---

**Part 2:**  List Others to Be Notified for a Debt That You Already Listed

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.